IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHRISTINA THEWS                                                                                  PLAINTIFF

V.                              Case No. 4:24-CV-00281-KGB-BBM

MICHELLE KING, Acting Commissioner,
Social Security Administration[1]                                                              DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Chief Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.    INTRODUCTION**

On August 16, 2018, Plaintiff Christina Thews ("Thews") filed a Title XVI application for supplemental security income. (Tr. at 97). In the application, she alleged disability beginning on August 16, 2018. *Id*. The application was denied initially and on reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ")

---

[1] On January 20, 2025, Michelle King was appointed as Acting Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner King is automatically substituted as the Defendant.

denied Thews's application by written decision, dated July 23, 2020. (Tr. at 97–110). The ALJ determined that Thews was not disabled for the period from August 16, 2018, through July 23, 2020. *Id*.

At issue in this case is Thews's *second* application for Title XVI benefits, which she filed on December 30, 2020, alleging that her disability began on December 30, 2020. (Tr. at 13). Like the first application, her second application was denied initially and upon reconsideration. *Id*. After conducting a hearing on the second application, an ALJ[2] denied Thews's application by written decision, dated May 15, 2023, (Tr. at 13–24), holding that Thews was not disabled from December 30, 2020, through May 15, 2023. *Id*.

On February 6, 2024, the Appeals Council denied Thews's request for review of the ALJ's decision on her second application for benefits. (Tr. at 1–5). The ALJ's decision now stands as the final decision of the Commissioner, and Thews has requested judicial review of the denial of her December 30, 2020 application for benefits.[3] For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.   THE COMMISSIONER'S DECISION

Thews was 52 years old on the application date, and she has at least a high-school education. (Tr. at 23). The ALJ found that Thews has not engaged in substantial gainful

---

[2] The ALJ who handled Thews's second application was not the same ALJ who handled Thews's first application.

[3] The Court uses the terms "December 30, 2020 application" and second application interchangeably. Both phrases refer to the same application.

activity since December 30, 2020, the application date.[4] (Tr. at 15). At Step Two, the ALJ determined that Thews has the following severe impairments: diabetes mellitus, neuropathy, and bilateral carpal tunnel syndrome. *Id*. The ALJ also considered Thews's complaints of a seizure disorder, cirrhosis of the liver, an upper thoracic hump, depression, and anxiety. (Tr. at 15–16). The ALJ found that none of these additional impairments were severe; the ALJ noted, however, that he still considered them when determining Thews's residual functional capacity ("RFC"). *Id.* at 16.

At Step Three, the ALJ concluded that Thews's impairments did not meet or equal a Listing.[5] (Tr. at 17–18). The ALJ then determined that Thews has the RFC to perform work at the medium-exertional level, except that she can no more than frequently handle and finger. (Tr. at 18). The ALJ based his decision, in part, on Thews's testimony that she was able to clean and prepare rental properties for new tenants, (Tr. at 19, 56); Thews's testimony that she lives alone and can do her laundry, cook, and perform household chores, (Tr. at 19, 57–59); and Thews's statements that she was active around the house and yard

---

[4] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). The beginning of the relevant time-period is the application date, as is the case for all supplemental security income claims.

[5] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id*.

and regularly spent about an hour at the store. (Tr. at 19, 269).

At Step Four, the ALJ found that Thews has no past relevant work. (Tr. at 23). Relying upon testimony from a Vocational Expert ("VE") at Step Five, the ALJ stated, based on Thews's age, education, work experience, and RFC, that there are jobs in the national economy that Thews can perform. (Tr. at 23–24). Accordingly, the ALJ concluded that Thews was not disabled from the alleged onset date through the date of the decision. *Id.*

### III.  DISCUSSION

#### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of

4

'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Thews's Arguments on Appeal

Thews contends that the evidence supporting the ALJ's decision is less than substantial. Specifically, Thews argues that (1) the second ALJ was bound to accept the first ALJ's RFC limitation to light work, based on res judicata or collateral estoppel, (Doc. 9 at 2–12); and (2) the RFC did not fully incorporate her limitations, *id.* at 12–20. In support of her argument that the ALJ's RFC finding was not supported by substantial evidence, Thews posits that (1) her nerve-conduction studies and her statements were improperly evaluated, *id.* at 12–15; (2) the medical opinion evidence was improperly credited, *id.* at 15–19; and (3) the RFC regarding manipulative activities was erroneous and unexplained, *id.* at 19–20. The Court will address each argument, in turn.

#### 1. Res Judicata and Collateral Estoppel

Despite Thews's assertion to the contrary, the second ALJ was not required to accept the prior ALJ's RFC for light work. "Collateral estoppel and res judicata can apply in certain circumstances of social security determinations, when the issue involves the same evidence, and the same period of disability." *Aguiniga v. Colvin*, 833 F.3d 896, 900 (8th Cir. 2016). Yet, when the subsequent application for benefits involves "a different time period and a different record altogether, these principles do not apply." *Bristow v. Kijakazi*,

5

No. 4:21-CV-00358-DPM-PSH, 2022 WL 3645269 *3 (E.D. Ark. Aug. 24, 2022) (collecting cases), *report and recommendation adopted as modified*, 2022 WL 4368241 (E.D. Ark. Sep. 21, 2022) (modified on different grounds).

In this case, Thews's first application for Title XVI supplemental security income was initiated on August 16, 2018, and denied on July 23, 2020; the ALJ in that case found that Thews had the RFC to perform light work and that she was not disabled. (Tr. at 97–110). Thews's second application for Title XVI supplemental security income was filed on December 30, 2020, six months after her first application for benefits was denied. (Tr. at 13). Much of the evidence supporting her December 30, 2020 application was created *after* the application date. (Tr. at 363–527). Accordingly, because new evidence and new medical records were presented and considered in connection with Thews's December 30, 2020 application for benefits, which involved a different alleged period of disability, neither res judicata nor collateral estoppel apply.

Thews also claims that the ALJ in this case is bound by the first ALJ's RFC findings unless he can show evidence of medical improvement, citing *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997), and *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987). (Doc. 9 at 6–12). In response, the Commissioner notes that these cases are not binding on this Court and distinguishable. *Bristow*, 2022 WL 3645269 at *3. The Court agrees with the Commissioner.

The Court first notes that the facts and legal issues presented in *Bristow* are very similar to those presented here. In *Bristow*, the ALJ found that the plaintiff had the RFC to perform medium work and was not disabled. *Id*. at *1. The plaintiff appealed, arguing that

6

the doctrine of res judicata required the ALJ to adopt an RFC for light work based on a prior agency decision. *Id*. at 2. The *Bristow* court held that "the second ALJ was not bound to apply the prior finding, nor was he required to demonstrate improvement in [plaintiff's] condition since the date of the first decision." *Id*. at 4. In reaching that conclusion, the *Bristow* court distinguished the cases cited by Thews and determined them to be non-binding. *See Bristow*, 2022 WL 3645269 at *3–4 (discussing *Drummond*, 126 F.3d at 837 and *Lively*, 820 F.2d at 1391); *but see Messmer v. Comm'r*, No. 4:20-cv-01330, 2021 WL 2682499, at *1 n.1 (E.D. Ark. June 30, 2021) (holding collateral estoppel applied because only a single day separated the prior ALJ determination and the new disability onset date and plaintiff's condition failed to improve or maybe worsened during this one-day period of time); *Smith v. Berryhill*, No. 3:16-cv-00156, ECF No. 13 at 3, (E.D. Ark. May 11, 2017) (holding collateral estoppel applied because just over a month separated the prior ALJ determination and the new disability onset date *and* the court found no improvement in plaintiff's condition).

Second, even though the ALJ was not required to demonstrate improvement in Thews's condition since the date of the first decision, the record shows that Thews had marked improvement between the denial of her initial application and the resolution of her second application. *See Drummond*, 126 F.3d at 842 ("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."). For example, the first ALJ noted that Thews demonstrated "wobbly heel to toe walking," (Tr. at 102); the second ALJ found that Thews was able to walk "heel to toe" without issue, (Tr. at 20). The first ALJ noted that Thews had "mild bilateral carpel tunnel syndrome,"

7

(Tr. at 104), which had improved to only impact the left side by the time of her second application,[6] (Tr. at 19, 271, 334).

Thews's diabetes also showed marked improvement. At the time of the first ALJ's decision, Thews's A1C was 13, and she was using daily insulin to treat her diabetes. (Tr. at 103). By the second ALJ's decision, Thews's A1C was 6, and she no longer required insulin to manage her blood sugar. (Tr. at 553, 493). Likewise, Thews was noted to have lost over sixty pounds. (Tr. at 21, 541). Moreover, while Thews alleged previously that she was unable to work because "she stumbles when she walks," (Tr. at 103), she was later able to regularly clean rental properties, take care of her dogs by herself, walk at least a block without needing a rest, text with friends and family, smoke a half pack of cigarettes a day, spend an hour at the store weekly, spend up to two hours a day tidying the house, and spend a "couple hours" outside daily. (Tr. at 18, 19, 292, 293, 295, 425).

Finally, Thews argues that, because her age changed during the pendency of her second application (she turned 55 years old), an RFC of light work would have classified her as disabled based on the Medical Vocational Guidelines.[7] (Doc. 9 at 11–12). While the Court is sympathetic to this argument, the ALJ explained his rationale that an RFC for medium work, rather than light, was proper, as discussed further below, and this Court finds that his conclusions are supported by substantial evidence. *Haley*, 258 F.3d at 747

---

[6] The Court notes that Thews self-identified as right-handed. (Tr. 271).

[7] The Guidelines "are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999) (quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)).

("Reversal is not warranted . . . merely because substantial evidence would have supported an opposite decision.").

In sum, the second ALJ was not required to adopt the first ALJ's finding that Thews was limited to light work as (1) the Eighth Circuit does not apply res judicata or collateral estoppel unless the subsequent application involves the same evidence and the same time period; (2) the cases cited by Thews for the proposition that collateral estoppel does apply have already been distinguished from the instant case, and (3) Thews's medical condition improved between her first and second applications for benefits.

### 2. RFC for Medium Work

Thews argues that the ALJ's RFC finding that she could perform work at the medium exertional level with frequent handling and fingering is not supported by substantial evidence. The Court disagrees. First, Thews had a consultative physical examination with Dr. Inge Carter on April 21, 2021, well into the second adjudicated time-period, who found that Thews had no physical limitations. (Tr. at 22, 77–80, 447–453). During that examination, Thews demonstrated that she could squat and rise from a sitting position, walk on heels and toes, hold a pen and write, pick up a coin, and touch fingertips to palms. (Tr. at 447–452). Thews showed normal gait, coordination, and balance, as well as good range of motion in her extremities and negative straight-leg raise. (Tr. at 426, 438, 449–50, 497–498).

Also, two state-agency medical experts reviewed the record and found Thews was able to perform a full range of medium exertion. (Tr. at 22, 78–80, 90-91). The ALJ concluded that these findings were supported by evidence that Thews's diabetes was "fairly

controlled" and the consultative examination findings showing no areas of significant concern. (Tr. at 22). Moreover, treatment for Thews's conditions was conservative, consisting of mostly medication management.

The ALJ also noted that Thews was still able to cook, clean houses for up to two hours a day, read, shop, do yard work, housework, and text. (Tr. at 17–19). This evidence is consistent with an RFC for medium exertional work.[8] Indeed, such daily activities undermine Thews's claim that she was totally disabled. *See, e.g., Milam v. Colvin*, 794 F.3d 978, 982 (8th Cir. 2015) (cooking, cleaning, showering, shopping); *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (driving, shopping, bathing, and cooking); *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012), 680 F.3d at 1067 (vacations, daily chores, providing self-care); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (cooking, cleaning, visiting friends and relatives, and attending church); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (some housework, cooking, and shopping).

Finally, contrary to Thews's contention, the ALJ *did* consider a nerve conduction study from 2022, showing "'mild' left carpal tunnel syndrome." (Tr. at 19, 22, 334, 451). The ALJ noted, however, "there appears to be no significant treatment." (Tr. at 19). In fact, the ALJ cited the study in the decision. (Tr. at 22). However, with regard to her carpal tunnel syndrome, Thews had a bilateral release before the alleged onset date. (Tr. at 22). And, despite the November 3, 2022 nerve conduction study showing mild left carpal tunnel syndrome, the ALJ noted that Thews lives alone, is active around the house, can spend up

---

[8] Medium work is defined as lifting or carrying no more than 50 pounds at a time with frequent lifting and carrying of up to 25 pounds, with a good deal of walking or standing. 20 C.F.R. § 404.1567(c).

to two hours a day cleaning, she uses her phone to text, and she smokes a half a pack of cigarettes a day, all of which establish Thews can frequently handle and finger and is able to perform medium exertion. (Tr. at 16–19, 22–23, 290–294). The RFC finding was proper and fully incorporated Thews's functional limitations.

## IV.   CONCLUSION

There is substantial evidence to support the Commissioner's decision that Thews was not disabled. Res judicata and collateral estoppel do not apply, and the RFC fully incorporated Thews's physical limitations.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 3rd day of February, 2025.

*Benecia Moore*
_____
UNITED STATES MAGISTRATE JUDGE

11